# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1489-18T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

M.H.,

      Defendant-Appellant,

and

G.H., Jr.,

      Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF J.H.,

      a Minor.

_____

Submitted October 22, 2019 – Decided November 27, 2019

Before Judges Fisher, Accurso and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Sussex County, Docket No. FG-19-0027-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Lauren Derasmo, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason Wade Rockwell, Assistant Attorney General, of counsel; Peter Damian Alvino, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (David Ben Valentin, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant M.H. appeals from a final judgment terminating her parental rights to her son, Jeff,[1] now four years old. She contends the Division of Child Protection and Permanency failed to prove the four prongs of the best interests standard of N.J.S.A. 30:4C-15.1(a)(1) to (4) by clear and convincing evidence. The Law Guardian joins with the Division in urging we affirm the judgment. Having considered defendant's arguments in light of the record and controlling law, we affirm the termination of her parental rights, substantially for the reasons expressed by Judge Gaus in his seventy-one page written opinion.

---

[1] This name is fictitious to protect the child's identity.

The facts are fully set forth in Judge Gaus's very detailed opinion, and need not be repeated here. Suffice it to say that defendant first came to the Division's attention on the day Jeff was born in 2015 when the hospital contacted the Division to express concern about defendant's blunted affect and her not bonding with the baby. Jeff was released to defendant's care a few days later, and defendant took the baby home to the mobile home where she lived with a friend, Ashley, her husband and their three children in Sussex County.

Division workers performing an emergency assessment within a week of Jeff's release from the hospital described the small home as piled with garbage bags, pizza boxes, empty food cans, and overflowing ashtrays. All three adults smoked, although they claimed to do so only outside their home. The stench of stale cigarette smoke was overwhelming. Defendant could not articulate her plans for her son, and the caseworker's questions were answered largely by Ashley speaking on defendant's behalf.

Ashley and defendant, then almost twenty-seven years old, had been friends since high school. Ashley is also Jeff's paternal aunt. Defendant has never lived alone or held a job. When defendant's grandmother put her out of the house when Ashley became pregnant with Jeff after a casual encounter,

 A-1489-18T4

Ashley took her in. Defendant describes Ashley as her best friend and "caretaker."

The Division determined defendant required intensive long-term in-home parenting supports and skills training and moved to put them in place immediately. Family Preservation Services, however, could not quickly perform in home sessions because of the cockroaches crawling on the walls, floors and ceiling. The Division twice sent an exterminator to fumigate, but the family's failure to regularly clean meant the problem persisted. Within six weeks of his birth, Jeff had to be taken by ambulance to the hospital for respiratory problems, exacerbated by cigarette smoke and the roach infestation, and was prescribed a nebulizer.

Notwithstanding the intensive services the Division put in place for defendant, Jeff was removed within ten weeks of his birth when the Division became convinced defendant could not care for him. Defendant had persistent hygiene problems and could not follow simple instructions such as holding the baby when she gave him a bottle. She instead persisted in propping him and his bottle up in his bassinet. Defendant could not prepare the baby's formula and, apparently on Ashley's advice, fed him Kool-Aid when he could not keep his formula down. Although repeatedly advised she could not give a six-week-

4

old infant Kool-Aid, she continued to do so, advising Division workers Jeff's pediatrician said it was okay or denying she had done so.

Defendant agreed to the need for services, and the matter proceeded as a protective services case under Title 30. See N.J.S.A. 30:4C-12. Defendant moved with Ashley's family to Pennsylvania within a month of Jeff's removal, and the Division coordinated services through that state's social services agencies. Through their efforts, defendant qualified for SSI benefits and food stamps and received assistance with active daily living requirements to address her poor hygiene. She also received developmental services, individual therapy, medication management, assistance with dental care and a referral to Adult Protective Services.

Although the mental health services unit in Pennsylvania also tried to assist defendant in obtaining independent housing, defendant refused to consider leaving Ashley. Ashley, however, had her own issues. She had previously been substantiated for neglect in New Jersey and was also the subject of child protective services referrals in Pennsylvania because her children were dirty and their home was without heat, electricity or running water for extended periods. The Pennsylvania agency eventually closed out

5

defendant's case after her repeated failures to attend appointments and comply with services.

At the guardianship trial, four mental health experts testified to defendant's very limited intellectual functioning. Defendant has an IQ of 61 and her reading comprehension is at the level of a second-grader. Although defendant was provided with supervised visitation throughout the pendency of the case, she required constant redirection and assistance in preparing Jeff's formula and reminders on when to feed him and change him. The experts were unanimous in the belief that defendant, because of her intellectual limitations, low level of independent skills and dependent personality, could not safely parent Jeff. There was no significant attachment between her and her son, and he was thriving in the care of the resource family with whom he had lived since his removal.

Judge Gaus concluded the Division proved all four prongs of the best interests standard by clear and convincing evidence. He found defendant, although morally blameless, harmed her son in the brief time he was in her care by being "unable to provide for his minimum basic needs due to her underlying cognitive deficits." He further found "that despite substantial support, services, and guidance from the Division and its service providers,

A-1489-18T4

[defendant] was unable and incapable of providing minimally adequate parenting for [Jeff]," that she has not benefitted from services tailored to assisting her, and is thus unable to eliminate the harm that has endangered her son. Judge Gaus found the record replete with proof of the Division's efforts to provide services geared to allowing defendant to remediate the harm. The judge also found there were no alternatives to termination, there being no relatives capable of caring for Jeff, including Ashley.

Finally, the judge found termination of defendant's rights would not do more harm than good "as there is no realistic likelihood that [defendant] will be able to safely and appropriately care for [Jeff] now or in the foreseeable future," despite the fact that she clearly loves her child. Based on the expert testimony, the judge also found that terminating defendant's rights will not cause Jeff any appreciable harm, whereas severing his connection to his resource parents, who are committed to adopting him, would be seriously detrimental to him.

Defendant appeals, raising the following issues:

> THE APPELLATE DIVISION MUST REVERSE
> THE JUDGMENT OF GUARDIANSHIP BECAUSE
> DCPP FAILED TO PROVE THAT THE MOTHER'S
> RELATIONSHIP WITH HER CHILD WAS
> HARMFUL OR THAT TERMINATION OF

A-1489-18T4

PARENTAL RIGHTS WOULD SERVE THE
CHILD'S BEST INTERESTS.

A.  M.H. Has Not Harmed Her Child Within The
Meaning Of N.J.S.A. 30:4C-15.1(a)(1).

1. No Medical Evidence Was Presented That J.H. Was
Harmed By The Ingestion Of A Small Amount Of
Watered-Down Kool-Aid And The Lower Court
Improperly Took Judicial Notice Of Harm.

2. The Condition Of The Family Home Was
Acceptable As Evidenced By DCPP's Allowing Four
Other Children To Remain In the Home.

B. The Trial Court's Decision That The Second Prong
Of The Statute Was Satisfied Was Not Supported By
Substantial, Credible Evidence.

C. The Record Does Not Support A Finding That
DCPP Met Its Burden Of Proof Under The Third
Prong Of The Statute.

1. DCPP failed to provide services for more than a
year and a half.

2. The trial court did not properly consider alternatives
to termination of M.H.'s parental rights.

D. The Conclusion That Termination Would Not Do
More Harm Than Good Was Not Supported By The
Evidence.

Our review of the record convinces us that none of these arguments is of

sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

The trial court did not terminate defendant's parental rights because Jeff was

harmed when defendant provided him with Kool-Aid in lieu of formula or because her home was dirty, as defendant alleges. It terminated defendant's rights because of the abundant evidence in the record that defendant's cognitive limitations prevented her from absorbing any direction as to how to care for him. As both the factual and expert testimony made clear, defendant, has never demonstrated she can adequately care for herself, much less a child.

Judge Gaus's factual findings and credibility determinations are thorough, and his legal analysis is sound. We accordingly affirm the termination of defendant's parental rights, substantially for the reasons expressed in the judge's thorough and thoughtful written opinion of November 16, 2018.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION